FILED & JUDGMENT ENTERED
David E. Weich

Feb 05 2009

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
|  | ) | |
| **L. Michael Wolfe** | ) | Chapter **13** |
|  | ) | |
| Debtor(s) | ) | Case No. **08-10904** |
|  | ) | |

### ORDER SUSTAINING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

THIS CAUSE coming on for hearing before the undersigned United States Bankruptcy Judge upon the objection by David G. Gray, Chapter 13 Trustee, to confirmation of the debtor's proposed plan, and having heard arguments of the Chapter 13 Trustee and of D. Rodney Kight, attorney for the debtor, and upon the record, the Court makes the following Findings of Fact:

### BACKGROUND

1. This proceeding was filed on November 7, 2008. The debtor proposed a plan to pay $685 per month for a 10-15% payout to unsecured creditors.

2. Among the secured creditors shown on Schedule D were Discover Bank and Easton Hoyt, LLC. Discover's claim was scheduled as secured in the amount of $6,400 and described as a judicial lien. Easton Hoyt's claim was scheduled as secured in the amount of $36,210.98 and described as a judicial lien.

3. Because of the value of debtor's real property and the amounts of the prior deeds of trust, the debtor's plan proposed to avoid the judgment liens of Discovery and Easton Hoyt under 11 U.S.C. §522(f) and pay the two claims as unsecured creditors at 10-15% of their

1

allowed amounts. The debtor had not paid the judgment creditors pre-petition and did not intend to pay the judgments post-petition, except as general unsecured claims in the plan.

4. The debtor's annualized current monthly income exceeded the applicable median family income in North Carolina. As an above-median income debtor, Mr. Wolfe had an applicable commitment period of 60 months and was required to calculate his Monthly Disposable Income (MDI) under 11 U.S.C. §1325(b)(2) to determine the amount he must pay to unsecured creditors. In calculating MDI, the debtor was permitted to deduct on line 47 of Form B22C "Future Payments on Secured Claims." The debtor deducted "Average Monthly Payments" of $106.67 for Discover Financial and $603.52 for Easton Hoyt, LLC, for a total deduction for these two creditors of $710.19. These deductions resulted in Monthly Disposable Income of $257.17. Multiplied by 60, the debtor asserted that he was required to pay $15,430.20 to general unsecured creditors, or approximately 12%.

5. The Chapter 13 Trustee objected to the deduction of the "Average Monthly Payments" totaling $710.19 for the two judgment creditors whose liens the debtor is avoiding and which he will pay in the plan as unsecured. The Trustee asked the Court to disallow these two deductions. If disallowed, the debtor's Monthly Disposable Income under 11 U.S.C. 1325(b)(2) would be $967.34. [The parties agreed to disallowance of an additional deduction, unrelated to this matter, of $58.33.] The Trustee asserted that a correctly calculated Monthly Disposable Income of $1,025.67 ($967.34 + $58.33) over 60 months would result in a payment to unsecured creditors of $61,540.20 or approximately 45%. The debtor's plan payment would have to increase to $1,470 per month to be confirmable. The issue presented in the Trustee's objection to confirmation is whether the debtor is entitled to deduct from his Current Monthly Income monthly payments equal to 1/60 of the amounts owed on each of the two judgments to arrive at his Monthly Disposable Income.

6. Based upon the foregoing Findings of Fact, the Court concludes as a matter of law that by deducting the judgment liens from his Current Monthly Income, the debtor does not commit all of his Monthly Disposable Income to payment of unsecured creditors and as such, his plan is not confirmable. The basis for this conclusions is as follows:

## STATEMENT OF LAW

7. An above-median income debtor must pay all of his projected disposable income to be received in the applicable commitment period to the plan for payment to the unsecured creditors. If a debtor improperly deducts expenses from his current monthly income, his plan cannot be confirmed because he is not paying all of his disposable income in the applicable

2

commitment period to the unsecured creditors.  These calculations are known as the Means Test and are done on Official Form B22C.

8.    The statutes governing deductibility of secured payments from the Means Test are 11 U.S.C. §1325(b) and 11 U.S.C. §707(b)(2)(A)(iii).  Section 1325(b)(1)(B) requires the debtor to pay all of his projected disposable income to be received in the applicable commitment period to the general unsecured creditors.  Section 1325(b)(2) defines disposable income as the debtor's current monthly income (less deductions from income not relevant hereto) less amounts reasonably necessary to be expended for support and maintenance of the debtor and his dependents and charitable contributions.  Section 1325(b)(3) provides that the amounts of reasonably necessary expenses to be deducted from income are to be determined in accordance with the provisions of Section 707(b)(2)(A) and (B).

9.    Section 707(b)(2)(A)(iii) allows the debtor to deduct from current monthly income the debtor's average monthly payments on account of secured debts, calculated as the sum of "(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months *following* the date of the petition…." (emphasis added) [1]

10.   Even though the debtor was making no payments to these creditors before the filing, he asserts nonetheless that since he had secured debts owing to the two judgment creditors on the date of filing, payments on those judgments were "contractually due" on the date of filing and therefore subject to deduction under Section 707(b)(2)(A)(iii).  The Court disagrees.

11.   A case directly on point was decided by Judge Stocks in the MDNC case of *In Re Crittenden,* No. 06-10322, 2006 Bankr. LEXIS 2172 (Bankr. M.D.N.C. Sept. 1, 2006).  In *Crittenden*, the Court ruled that because the debtor deducted from current monthly income payments on debts secured by collateral to be surrendered in the Chapter 13 plan, he was not paying all of his monthly disposable income to the unsecured creditors and therefore the plan

---

[1] 11 U.S.C. § 707(b)(2)(A)(iii) provides:

[t]he debtor's average monthly payments on account of secured debts shall be calculated as the sum of -

(I)    the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II)   any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

3

was not confirmable. Although in our case Mr. Wolfe deducted 1/60 the face amount of avoided judgment liens from current monthly income on the Means Test, there is no basis on which to differentiate between the two factual situations. See *In Re Hoss*, 392 B.R. 463 (Bankr. Kan. 2008) (debtor may not subtract payments on three mortgages whose liens are stripped in the Chapter 13).

12. Many courts that have considered this issue agree with the Trustee. The reasoning used by these courts is consistent. First, the terms of section 707(b)(2)(A)(iii) contemplate that future expenses will be used to determine whether a debtor will have sufficient disposable income going forward. In examining the meaning of a statute, courts begin with the statute's plain language, and avoid constructions that render some words redundant or another part of the same statute superfluous. *United States v. Alaska*, 521 U.S. 1, 59 (1997) ("The Court will avoid an interpretation of a statute that renders some words altogether redundant"); *United States v. Gomez-Hernandez*, 300 F.3d 974, 979 (8th Cir. 2002) (observing that courts should "avoid a statutory construction that would render another part of the same statute superfluous").

The dictionary defines "following" as "subsequent to," "next in the order of time" or in the future. *Merriam-Webster Online Dictionary* (2007).[2] This meaning should be imparted to the term "following" as it appears in section 707(b)(2)(A)(iii), absent clear indication that Congress intended to give the term a different meaning. *Cudworth v. Midcontinent Commc'ns*, 380 F.3d 375, 381 (8th Cir. 2004). *See also Schumacher v. Cargill Meat Solutions Corp.*, 2008 WL 222273 at *2 (8th Cir. Jan. 29, 2008) ("This court often turns to a commonly used dictionary to ascertain a word's ordinary meaning."). Using the common, ordinary meaning of "following," section 707(b)(2)(A)(iii) would only allow deductions for payments to secured creditors that will be made "subsequent to" or "after" the petition date. Payments on avoided judgment lines that will never be made would not qualify. *See In re Naut*, 2008 WL 191297 at *9 (Bankr. E.D. Pa. Jan. 22, 2008) (applying dictionary definition of "following" to conclude that loan payments must actually be due in each of the 60 months after the bankruptcy filing before the debtor can claim the expense under the means test).

Second, the fact that Congress employed the phrase "scheduled as contractually due" in the section is consistent with this reading of the term "following." Significantly, Congress has "used the phrase 'scheduled as' several times in the Bankruptcy Code. . . .to refer to whether a debt is identified on a debtor's bankruptcy schedules." *In re Skaggs*, 349 B.R. 594,

---

[2] Available at: http://www.m-w.com/dictionary/following

4

599 (Bankr. E.D. Mo. 2006).[3] This use of the phrase "scheduled as contractually due" thus signals that secured debts are permissible deductions on Form 22C only to the extent they are legitimately on the debtor's schedules as a debt to be paid in the 60 months after the debtor filed bankruptcy. The debtor's schedules and statements form the basis from which the Court should determine whether he will be making future payments with respect to the property of the estate which secures those debts. The entire phrase "average monthly payments on account of secured debts scheduled as contractually due in each month of the 60 months following the date of the petition" is best construed as contemplating a forward-looking calculation. *In re Ray*, 362 B.R. 680, 685 (Bankr. D. S.C. 2007).

The debtor argues that he should be allowed deduct from current monthly income 1/60th of the face amount of each judgment because the judgments are based on what used to be contracts to pay credit card debts. The Court disagrees. For these judgments, there are no "average monthly payment on account of secured debts scheduled as contractually due in each month of the 60 months following the date of the petition." A judgment is not a contract. A judgment is a court determination that a delinquent debt is now due and payable in full. There is no longer a contract with payments due on a monthly basis. The debtor cannot bootstrap his judgments into secured debts with monthly payments contractually due on a monthly basis.

Third, an examination of § 707(b)(2)(A)(iii)(I) in context with its "conjunctive partner," section 707(b)(2)(A)(iii)(II), "reinforces the conclusion that § 707(b)(2)(A)(iii)(I) applies only to payments on debts secured by collateral that a debtor intends to keep." *Burden*, 380 B.R. 194, 202 (Bankr. W.D. Mo. 2007). Section 707(b)(2)(A)(iii)(II) allows, in addition to secured debt payments scheduled as contractually due, deductions for "any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence. . ." Allowing only debtors who intend to retain property to deduct secured debt expenses is harmonious with the explicitly forward-looking nature of section 707(b)(2)(A)(iii)(II), which contemplates an evaluation of a debtor's intention to maintain possession of property. *In re Burden*, 380 B.R. at 201-02.

Two lines of cases take an opposite view of section 707(b)(2)(A)(iii), one holding that the words "contractually due" are controlling, and the other holding that the words

---

[3] *See, e.g.*, 11 U.S.C. § 1111(a) ("wherein a claim or interest is not deemed filed if it is scheduled as disputed, contingent or unliquidated"). Other examples where the term "scheduled" is used to refer to a debtor's bankruptcy schedules include 11 U.S.C. § 523(a)(3) (individual debtor not discharged from debt "neither listed nor scheduled under section 521(1) of this title. . .") and 11 U.S.C. § 554(c) ("Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title").

"contractually due" control unless the collateral is actually surrendered.[4]   The "contractually due unless actually surrendered" courts allow debtors to deduct payments on secured debt except when the collateral has actually been surrendered to the secured creditor.  The Court chooses to reject this line of cases and their analysis.[5]

These lines of cases present no unified structure for the analysis of section 707(b)(2)(A)(iii).  Their analyses are fundamentally irreconcilable – the first holds that the means test is designed to be an historic reading of a debtor's financial condition as of the petition date, while the second requires consideration of events occurring after the petition date be considered.  More importantly, neither line takes into account or gives effect to all words and provisions of section 707(b)(2)(A)(iii), whereas the construction advanced by the Trustee does.  One of the main requirements in Chapter 13 is that a plan be funded with all of a debtor's disposable income.  It would go against the very essence of Chapter 13 to allow a debtor to deduct an expense that is non-existent at the time of confirmation.

Section 707(b)(2)(A)(iii) "allows debtors to deduct their average monthly payments on secured debts based upon those amounts that will be contractually due during the 60 month period following the petition."  *In re Edmunds*, 350 B.R. 636, 645 (Bankr. D. S.C. 2006).  The method used to determine whether an expense for secured debt may be deducted under the means test must therefore consider the amount, if any, that will actually be paid by the debtor in the future.  Proper application of section 707(b)(2)(A)(iii) requires courts to account for a debtor's intent to surrender collateral and make no future payments to secured creditors.

13.    This Court has already confirmed that Form B22C generally is a forward-looking concept in the case of *In re Plumb,* 06-10528 (Bankr. W.D.N.C., March 16, 2007).  That ruling is consistent with the *Crittenden* line of cases that consider the intent of the debtor actually to pay the secured claims in the future as the determinative factor in their deductibility.

14.  See also:  *In re Renicker*, 342 B.R. 304 (Bankr.W.D.Mo.2006); *In re McPherson*, 350 B.R. 38 (Bankr.W.D.Va.2006); *In Re Fager,* 2008 WL 2497694 (Bankr. D. Neb.);  *In re Wilson,* 383 B.R. 729, 733-34 (B.A.P. 8th Cir.2008); *In re Gonzalez*, No. 07-36802 (Bankr. S.D.TX, 2008); *In Re Koch*, 391 B.R. 230 (Bankr. N.D.N.Y.,2008)

---

[4] *See e.g.*, *In re Walker*, 2006 WL 1314125, at *4 (Bankr. N.D. Ga. May 1, 2006) (surrender of collateral does not change the fact that payments are contractually due);  In re Oliver, 2006 WL 2086691, at *3 (Bankr. D. Or., June 29, 2005); *see also In re Hartwick*, 373 B.R. 645, 653-55 (D. Minn. 2007); In *re Mundy*, 363 B.R. 407, 412-13 (Bankr. M.D. Pa. Mar. 1, 2007).

[5] *See, e.g., In re Singletary*, 354 B.R. 455, 467 (Bankr. S.D. Tex. 2006); *see also In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006); *c.f. In re Brandenburg*, 2007 WL 1459402 (Bankr. E.D. Wis. May 15, 2007) (finding mortgage debt not "scheduled as contractually due" as of date of state law foreclosure sale).

15. It should be noted that many courts view the deductibility of debts secured by collateral to be surrendered differently in Chapter 7 cases than in Chapter 13 cases, based on the function of the Means Test. The purpose for the Means Test in a Chapter 7 case is to determine whether the debtor is abusing bankruptcy relief in seeking a discharge; the purpose for the Means Test in Chapter 13 is to determine the amount the debtor must pay to unsecured creditors. *In Re Crittenden,* No. 06-10322, 2006 Bankr. LEXIS 2172 (Bankr. M.D.N.C. Sept. 1, 2006); *In re Coleman*, 382 B.R. 759 (Bankr. W. D. Ark. 2008); *Lynch v. Haenke, 5:07-CV-336-BO (Dist. Ct. EDNC 2008)* (Chapter 7 debtor may deduct secured payments even if collateral is to be surrendered).

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS, THEREFORE, ORDERED that the objection of the Chapter 13 Trustee is sustained.

This Order has been signed electronically,    George R. Hodges
pursuant to administrative order of the    United States Bankruptcy Judge
Court.  Effective as of date of entry.